# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BALL, | : | CIVIL NO. 1:12-CV-815 |
| Plaintiff, | : | (Chief Judge Kane) |
| v. | : | (Magistrate Judge Carlson) |
| LISA D'ADDIO, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

#### A.  Introduction

This case aptly illustrates one of the risks which emerge when a litigant engages in reflexive, redundant, repetitive litigation: sometimes a serial litigator will lose track of who she has sued and what she has claimed. In this case, the Plaintiff, Dawn Ball, has filed a complaint which raises claims that are identical to a prior complaint which she has pending before this Court. Because these claims are legally identical and arise out of the same nucleus of facts, consistent with settled case law, we conclude that Ball should not be permitted to file the same meritless legal claim repeatedly in different lawsuits and we recommend that this complaint be dismissed.

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern. The Plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and candidly acknowledges that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in thing, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp. 6-7).

Furthermore. Ball is also an inmate who has reported to the Court that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste. Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.). In this complaint, Ball describes an episode in which a discussion

regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball has approximately twenty-five lawsuits lodged before this Court.[1]

Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief

---

[1] See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

could be granted. The history of repeated, frivolous and meritless litigation in federal court by this Plaintiff began in March of 2008, when Ball filed a complaint in the case of Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.). On December 10, 2008, the District Court dismissed this civil action for failure to exhaust her administrative remedies, Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36), and on July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action. Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 44).

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.). This action was dismissed by the District Court, which found Ball's complaint to be frivolous, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36) and Ball's appeal of this dismissal order was summarily denied by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

---

[2] 28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

While this action was pending, Ball filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.) on June 3, 2011. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1). On June 15, 2011, upon a screening review of this complaint, the District Court dismissed this action for failure to state a claim upon which relief could be granted Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10). On September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

**B.     Ball's Current Lawsuit**

It is against this backdrop that Ball chose to pursue the instant case. Ball's latest complaint, which was filed on May 2, 2012, arises out of a psychiatric examination which was recently conducted of the Plaintiff in connection which some other litigation. (Doc. 1) According to Ball, in November of 2011, when she was sent to Danville State Hospital for this examination, a prison psychologist, Lisa D'Addio, forwarded some of Ball's medical records to the examining psychiatrist at Danville State Hospital, Dr. Robert Sera. Alleging that she did not give permission for these records to be transferred Ball sues both D'Addio and Dr. Sera, and demands both $100,000 in compensatory damages and punitive damages of $100,000 from each Defendant.

This claim against Defendant D'Addio is legally identical and factually related to an earlier claim brought by Ball against this same Defendant in a prior lawsuit, Ball v. Famiglio, 1:11-CV-1834 (M.D.Pa.). As in the instant case, in Ball v. Famiglio, 1:11-CV-1834 (M.D.Pa), the Plaintiff alleged that Defendant D'Addio, gave her medical records to the state hospital without her permission. According to Ball this release of medical information related to "a pysch evaluation done for the court." Thus, these two lawsuits bring absolutely identical legal claims regarding Ball's right

to prohibit disclosure of medical information between health care providers who are assessing the Plaintiff. Moreover, both claims arise out of what appears to be the same court ordered evaluation of Ball in some other litigation and are, thus, inextricably intertwined with one another as a factual matter. In <u>Ball v. Famiglio</u>, 1:11-CV-1834 (M.D.Pa.), we addressed the Plaintiff's claims against Defendant D'Addio in a report and recommendation, which recommends that these claims be dismissed.

Despite the fact that she is actively litigating this precise issue in another lawsuit, Ball has persisted in filing this claim, yet again, in the instant case. Along with this complaint, Ball filed a motion for leave to proceed *in forma pauperis*. (Doc. 2) For the reasons set forth below, we will grant this motion for leave to proceed *in forma pauperis* be granted, but as part of the Court's legally-mandated screening process we recommend that the complaint be dismissed for failure to state a claim upon which relief can be granted.

    **II.**    <u>**Discussion**</u>

        **A.**    <u>**Screening of *Pro Se* Complaints–Standard of Review**</u>

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii).

In addition, we are obliged to review prisoners' complaints pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which

8

provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not

"assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify

11

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, when assessing whether Ball, an erratic inmate who exercises eccentric litigation judgment, may bring a class action on behalf of all of her fellow prisoners, and when examining whether the complaint has been brought in a timely fashion.

### B. Ball Should Not Be Permitted to File the Same Claim Repeatedly in Different Lawsuits

In this case our initial screening analysis of Ball's latest complaint reveals several flaws in this pleading. First, as a procedural matter, it appears that Ball, a serial litigator, is now commencing a new pattern of serial litigation which involves filing the same essential claim in successive lawsuits.

We should not indulge this practice. Indeed, Ball's efforts to re-assert identical legal claims arising out of the same nucleus of operative facts runs afoul of a longstanding tenet of this Court, the "first-filed" rule:

> Nearly fifty years ago, this court adopted what has become known as the "first-filed" rule. We concluded that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir.1941) (quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)), cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). Since then, this policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of "similar cases ... in different federal district courts." See generally Compagnie Des Bauxites De Guinea v. Insurance Co. of North America, 651 F.2d 877, 887 n. 10 (3d Cir.1981), cert. denied, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed. 1312 (1982); see also Berkshire Intern. Corp. v. Marquez, 69 F.R.D. 583, 586 (E.D.Pa.1976) ("it has long been the policy of our Circuit Court that absent unusual circumstances" the first-filed rule applies in cases of concurrent federal jurisdiction); accord West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir.1985) ("federal courts have long recognized that ... comity requires federal district courts ... to exercise care to avoid interference with each other's affairs.").

E.E.O.C. v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) aff'd, 493 U.S. 182 (1990); see, e.g., Time Warner Cable, Inc. v. USA Video Technology Corp., 520 F.Supp.2d 579 (D.Del. 2007).

While the "first-filed" rule typically applies when overlapping claims are brought by a party in different courts, the principles which animate this policy apply with equal force to a situation like that presented here, where Ball has filed the same claim in successive, but separate, lawsuits before this Court. In this setting, where a single legal claim arising out of a specific set of facts is brought in two separate actions, under the "first-filed" rule the proper exercise of discretion would call for us to dismiss the second claim in favor of having the parties proceed on the first-filed action. See Time Warner Cable, Inc. v. USA Video Technology Corp., 520 F.Supp.2d 579 (D. Del. 2007).

Similarly, Rule 15(d) of the Federal Rules of Civil Procedure contemplates that identical claims arising over time out of a single course of conduct should be brought in a single lawsuit and provides the means for combining these related episodes, a motion to supplement a complaint. Thus, in a case such as this, where a *pro se* prisoner has filed a complaint, and then wishes to level subsequent, related allegations pertaining to the same subject matter as the original complaint, the proper course is for

the inmate to move to supplement the original complaint, and not for the prisoner to file a new and separate lawsuit. See Pauline v. State of Hawaii Dept. of Public Safety, 773 F.Supp.2d 914 (D. Hawaii 2011).

Thus, as a threshold matter, in order to ensure the orderly presentation of these claims, it is recommended that Ball's complaint in this action be dismissed without prejudice to her endeavoring to raise these related matters in the first-filed case which raised these identical legal claims, Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.).

### C. Ball's Claim Fails on its Merits

Beyond its procedural flaws, more fundamentally, this complaint fails on its merits. While Ball's complaint does not explain in any way why she believes that medical staff in a prison and state hospital cannot share medical information relating to a prisoner who has been sent to the state hospital for an evaluation, liberally construed, Ball appears to be advancing a novel claim to a private right of action under the federal law which provides for confidentiality of medical records, the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §201, alleging that Defendant D'Addio violated this health care statute by disclosing health information to Dr. Sera at the Danville State Hospital without her prior permission.

This novel claim warrants only brief consideration. The courts that have examined HIPAA have generally concluded "that HIPAA does not create such a

15

private right [of action for individual plaintiffs]. See Rigaud v. Garofalo, 2005 WL 1030196 (E.D.Pa. 2005); Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560 (M.D.Pa.2005); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F.Supp.2d 1176 (D.C.Wyo.2001); Brock v. Provident Am. Ins. Co., 144 F.Supp.2d 652 (N.D.Tex.2001); Means v. Indep. Life and Accident Insurance Co., 963 F.Supp. 1131 (M.D.Ala.1997); Wright v. Combined Insurance Co. of America, 959 F.Supp. 356 (N.D.Miss.1997)." Carney v. Snyder, No. 06-23, 2006 WL 2372007, *4 (W.D.Pa Aug. 15, 2006). In short: "There is no federal private right of action under HIPAA. See Dodd v. Jones, 623 F.3d 563, 569 (8th Cir.2010); Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1082 (9th Cir.2007); Acara v. Banks, 470 F.3d 569 (5th Cir.2006); Compliance and Enforcement, 65 Fed.Reg. 82,600, 82,601 (Dec. 28, 2000) ('Under HIPAA, individuals do not have a right to court action.')." Baum v. Keystone Mercy Health Plan, CIV.A. 11-1261, 2011 WL 4632569 (E.D. Pa. Oct. 5, 2011). Therefore, Ball simply may not maintain a private HIPAA claim against these Defendants in federal court arising out of the disclosure of her medical information.

### D. The Request for Unliquidated Damages Is Improper

Finally, we note that the Plaintiff's demand for specified compensatory damages from the Defendant in the amount of $100,000, is inappropriate under the rules of this Court. Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the Court

to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, the Plaintiff's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that: " The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P. 8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved*. The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other." Local Rule 8.1 (emphasis added). Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, it is further recommended that this specific dollar claim be stricken from the complaint.

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that Ball be given another, final opportunity to further litigate this matter by endeavoring to promptly file a second amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* Plaintiffs

17

often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the Plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the Plaintiff to comply with the rules governing civil actions in federal court.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED, but that the Plaintiff's complaint be dismissed without prejudice to providing the Plaintiff one final opportunity to endeavor to correct the defects cited in this report, provided that the Plaintiff acts within 20 days of any dismissal order.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of May 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge