**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:12-CV-815** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **LISA D'ADDIO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.   **Statement of Facts and of the Case**

A.   **Introduction**

This case aptly illustrates one of the risks which emerge when a litigant engages in reflexive, redundant, repetitive litigation: sometimes a serial litigator will lose track of who she has sued and what she has claimed. In this case, the Plaintiff, Dawn Ball, filed a complaint which raised claims that were identical to a prior complaint which she had pending before this Court. Because these claims were legally identical and arose out of the same nucleus of facts, consistent with settled case law, we concluded that Ball should not be permitted to file the same meritless

1

legal claim repeatedly in different lawsuits and we recommended that this complaint be dismissed.

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern. The Plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and candidly acknowledges that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in thing, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42,  pp. 6-7).

Furthermore, Ball is also an inmate who has reported to the Court that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste. Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages,

as illustrated by the civil complaint which she has filed <u>Ball v. Barr</u>, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has approximately twenty-five lawsuits lodged before this Court.[1]

---

[1]<u>See, e.g.</u>, <u>Ball v. SCI Muncy</u>, No.1:08-CV-700 (M.D.Pa.); <u>Ball v. SCI-Muncy</u>, No. 1:08-CV-701 (M.D.Pa.); <u>Ball v. Hill</u>, No.1:09-CV-773 (M.D.Pa.); <u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Oden</u> , No 1:09-CV-847 (M.D.Pa.); <u>Ball v. Bower</u>, No. 1:10-CV-2561 (M.D.Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Struther</u>, No. 1:11-CV-1265 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:11-CV-1422 (M.D.Pa.); <u>Ball v. Beckley</u>, No. 1:11-CV-1829 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.); <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.); <u>Ball v. Powley</u>, No. 1:11-CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Famiglio</u>, No. 1:11-CV-1834 (M.D.Pa.); <u>Ball v. Eckroth,</u> No. 1:11-CV-2238 (M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v Curham</u>, No. 1:12-CV-12 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:12-CV-814 (M.D.Pa.); <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.) .

Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted.  The history of repeated, frivolous and meritless litigation in federal court by this Plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the District Court dismissed this civil action for failure to exhaust her administrative remedies,   <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36.), and on July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action.  <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.) (Doc. 44.)

On May 5, 2009, Ball filed a second civil action in the case of <u>Ball v. Hartman,</u> No. 1:09-CV-844 (M.D. Pa.).  This action was dismissed by the District Court, which found Ball's complaint to be frivolous, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36.) and Ball's appeal of this dismissal order was summarily denied

by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]  Ball v. Hartman, No.

1:09-CV-844 (M.D. Pa.) (Doc. 48.)

 While this action was pending, Ball filed yet another lawsuit in the case of Ball

v. Butts, No. 1:11-CV-1068 (M.D.Pa.) on June 3, 2011.  Ball v. Butts, No. 1:11-CV-

1068 (M.D.Pa.)(Doc. 1.)  On June 15, 2011, upon a screening review of this

complaint, the District Court dismissed this action for failure to state a claim upon

which relief could be granted Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8.)

Ball appealed this dismissal.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10).

On September 21, 2011, the court of appeals entered an opinion and order dismissing

Ball's appeal as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate

court opinion and order spoke unambiguously regarding the frivolous nature of this

particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen
> this appeal to determine whether it is frivolous.  See 28 U.S.C. §
> 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis
> either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).
> This appeal lacks any such basis. As the District Court adequately

--------

[2]28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing
fee, or any portion thereof, that may have been paid, the court shall dismiss the
case at any time if the court determines that . . . the action or appeal, . . . is
frivolous or malicious."  Thus the appellate court's October 29, 2010 ruling was
tantamount to a declaration that this action was also frivolous.

explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.   **Ball's Current Lawsuit**

It was against this backdrop that Ball chose to pursue the instant case.  Ball's initialed complaint, which was filed on May 2, 2012, arose out of a psychiatric examination which was recently conducted of the Plaintiff in connection with some other litigation.  (Doc. 1.)  According to Ball, in November of 2011, when she was sent to Danville State Hospital for this examination, a prison psychologist, Lisa D'Addio, forwarded some of Ball's medical records to the examining psychiatrist at Danville State Hospital, Dr. Robert Sera.  Alleging that she did not give permission for these records to be transferred Ball sued both D'Addio and Dr. Sera, and demanded both $100,000 in compensatory damages and punitive damages of $100,000 from each Defendant.

This claim against Defendant D'Addio was legally identical and factually related to an earlier claim brought by Ball against this same Defendant in a prior lawsuit, Ball v. Famiglio, 1:11-CV-1834 (M.D.Pa.).  As in the instant case, in Ball v. Famiglio, 1:11-CV-1834 (M.D.Pa), the Plaintiff alleged that Defendant D'Addio, gave her medical records to the state hospital without her permission.  According to Ball this release of medical information related to "a pysch evaluation done for the court."  Thus, these two lawsuits brought absolutely identical legal claims regarding Ball's right to prohibit disclosure of medical information between health care providers who are assessing the Plaintiff.  Moreover, both claims arose out of what appears to be the same court ordered evaluation of Ball in some other litigation and were, thus, inextricably intertwined with one another as a factual matter.  In Ball v. Famiglio, 1:11-CV-1834 (M.D.Pa.), we addressed the Plaintiff's claims against Defendant D'Addio in a report and recommendation, which recommended that these claims be dismissed.

Despite the fact that she was actively litigating this precise issue in another lawsuit, Ball has persisted in filing this claim, yet again, in the instant case.  Along with this complaint, Ball filed a motion for leave to proceed *in forma pauperis*.  (Doc. 2.)  On May 4, 2012, as part of the Court's legally-mandated screening process, we recommended that this complaint be dismissed for failure to state a claim upon which

relief can be granted. In addition, we recommended that these allegations should be dismissed without prejudice to providing Ball one final opportunity to attempt to cure the defects in her pleadings noted in this report and recommendation by filing a single, coherent amended complaint. (Doc. 7.)

On June 1, 2012, the District Court adopted this report and recommendation, (Doc. 11.), and instructed Ball in clear and precise terms as follows:

> **NOW**, on this 1st day of June 2012, **IT IS HEREBY ORDERED THAT** upon review of Magistrate Judge Carlson's May 4, 2012 Report and Recommendation (Doc. No. 10)**,** and no timely objections being filed, **IT IS HEREBY ORDERED THAT**:
>
> 1. The Court adopts the Report and Recommendation of Magistrate Judge Carlson.
>
> 2. Plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED and Plaintiff's complaint is DISMISSED without prejudice.
>
> 3. Plaintiff shall have twenty (20) days to amend her complaint. If Plaintiff fails to file an amended complaint in the time specified, the Clerk of Court will be directed to close the case.

(Id.)

Ball has not complied with this twenty-day deadline in which to file an amended complaint. Instead, on May 15, 2012, Ball sought to stay all of her multi-faceted federal court litigation, in an apparent effort to delay or avoid rulings in these cases on many ripe defense motions. (Doc. 8.) On May 15, 2012, we denied this request made by Ball, noting that there was something profoundly inconsistent in these

pleadings, since Ball's motions began with factual averments which detailed a series of allegedly improper actions by prison officials, allegations which if true required immediate attention by the courts. (Doc. 9.) Yet, while Ball recited facts which cried out for action by the courts, she sought relief which would not be in her interests, or in the interests of justice, a complete cessation of this litigation. (Id.) Because we believed that we owed it to Ball, and to all of the many Defendants she has sued, to promptly address the merits of her claims, on May 15, 2012, we denied Ball's first motions to generally stay all of Ball's litigation to some future date of her choosing. Instead, we instructed Ball in clear and precise terms as follows:

> In the meanwhile Ball is directed to continue to comply with the filing deadlines previously set by this court and  IT IS ORDERED that any future requests for continuance or stay must be made individually by Ball in each of her cases along with factual averments specific to each particular case explaining why a stay or continuance is necessary.

(Id.)

Presented with this clear instruction from the Court, Ball then chose to ignore this guidance and filed another global stay request in all of her cases. (Doc. 13.) Indeed, in this second stay motion Ball endeavored not only to ignore the Court's prior order, but to try to ignore the Court altogether by instructing the Clerk's Office to present these latest stay motions to another judge. (Id.) Furthermore, Ball's motion sought more than a stay of future litigation, she also demanded that all orders in all of

9

her cases entered since April, 2012, be "revoked." (Id.) We denied this second stay motion as well, (Doc. 15.), and Ball allowed her filing deadline for submission of an amended complaint to lapse without any action on her part to cure these serious defects in her pleadings. Thus, we are currently presented with a deeply flawed complaint submitted by a Plaintiff who refuses to correct this pleading and has ignored Court-ordered deadlines.

On these facts, it is recommended that the complaint now be dismissed with prejudice.

## II.   **Discussion**

This Court has an ongoing statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

10

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather,

in conducting a review of the adequacy of complaint, the Supreme Court has advised

trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.   Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.   Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this case, having previously conducted this legal analysis, we determined that, as a procedural matter, it appeared that Ball, a serial litigator, was now commencing a new pattern of serial litigation which involves filing the same essential claim in successive lawsuits, a practice we should not indulge. Indeed, Ball's efforts to re-assert identical legal claims arising out of the same nucleus of operative facts ran afoul of a longstanding tenet of this Court, the "first-filed" rule:

> Nearly fifty years ago, this court adopted what has become known as the "first-filed" rule. We concluded that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir.1941) (quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)), cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). Since then, this policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of "similar cases ... in different federal district courts." See generally Compagnie Des Bauxites De Guinea v. Insurance Co. of North America, 651 F.2d 877, 887 n. 10 (3d Cir.1981), cert. denied, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed. 1312 (1982); see also Berkshire Intern. Corp. v. Marquez, 69 F.R.D. 583, 586 (E.D.Pa.1976) ("it has long been the policy of our Circuit Court that absent unusual circumstances" the first-filed rule applies in cases of concurrent federal jurisdiction); accord West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir.1985) ("federal courts have long recognized that ... comity requires federal district courts ... to exercise care to avoid interference with each other's affairs.").

E.E.O.C. v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) aff'd, 493 U.S.

182 (1990); see, e.g., Time Warner Cable, Inc. v. USA Video Technology Corp., 520

F.Supp.2d 579 (D.Del. 2007).

While the "first-filed" rule typically applies when overlapping claims are

brought by a party in different courts, the principles which animate this policy apply

with equal force to a situation like that presented here, where Ball filed the same claim

in successive, but separate, lawsuits before this Court.  In this setting, where a single

legal claim arising out of a specific set of facts is brought in two separate actions,

under the "first-filed" rule the proper exercise of discretion would call for us to

dismiss the second claim in favor of having the parties proceed on the first-filed

action. See Time Warner Cable, Inc. v. USA Video Technology Corp., 520 F.Supp.2d

579 (D. Del. 2007).

Similarly, Rule 15(d) of the Federal Rules of Civil Procedure contemplated that

identical claims arising over time out of a single course of conduct should be brought

in a single lawsuit and provides the means for combining these related episodes, a

motion to supplement a complaint.  Thus, in a case such as this, where a *pro se*

prisoner filed a complaint, and then wished to level subsequent, related allegations

pertaining to the same subject matter as the original complaint, the proper course was

for the inmate  to move to supplement the original complaint, and not for the prisoner

to file a new and separate lawsuit. See Pauline v. State of Hawaii Dept. of Public

Safety, 773 F.Supp.2d 914 (D. Hawaii 2011).

Beyond its procedural flaws, more fundamentally, this complaint failed on its

merits.  While Ball's complaint did not explain in any way why she believed that

medical staff in a prison and state hospital could not share medical information

relating to a prisoner who has been sent to the state hospital for an evaluation, liberally

construed, Ball appeared to be advancing a novel claim to a private right of action

under the federal law which provides for confidentiality of medical records, the Health

Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §201,

alleging that Defendant D'Addio violated this health care statute by disclosing health

information to Dr. Sera at the Danville State Hospital without her prior permission.

The courts that have examined HIPAA have generally concluded "that HIPAA

does not create such a private right [of action for individual plaintiffs].  See Rigaud

v. Garofalo, 2005 WL 1030196 (E.D.Pa. 2005); Dominic J. v. Wyoming Valley West

High School, 362 F.Supp.2d 560 (M.D.Pa.2005); O'Donnell v. Blue Cross Blue Shield

of Wyoming, 173 F.Supp.2d 1176 (D.C.Wyo.2001); Brock v. Provident Am. Ins. Co.,

144 F.Supp.2d 652 (N.D.Tex.2001); Means v. Indep. Life and Accident Insurance Co.,

963 F.Supp. 1131 (M.D.Ala.1997); Wright v. Combined Insurance Co. of America,

959 F.Supp. 356 (N.D.Miss.1997)."   Carney v. Snyder, No. 06-23,   2006 WL

17

2372007, *4 (W.D.Pa Aug. 15, 2006).  In short: "There is no federal private right of action under HIPAA. See Dodd v. Jones, 623 F.3d 563, 569 (8th Cir.2010); Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1082 (9th Cir.2007); Acara v. Banks, 470 F.3d 569 (5th Cir.2006); Compliance and Enforcement, 65 Fed.Reg. 82,600, 82,601 (Dec. 28, 2000) ('Under HIPAA, individuals do not have a right to court action.')." Baum v. Keystone Mercy Health Plan, CIV.A. 11-1261, 2011 WL 4632569 (E.D. Pa. Oct. 5, 2011).  Therefore, Ball simply may not maintain a private HIPAA claim against these Defendants in federal court arising out of the disclosure of her medical information.

While our screening analysis called for dismissal of this action the Court provided Ball another, final opportunity to further litigate this matter by endeavoring to promptly file a proper amended complaint.  Having concluded that this *pro se* complaint was flawed in multiple and profound ways, we followed this course recognizing that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).

Thus, in this case, Ball was given this opportunity to further amend her complaint, but has now forfeited this opportunity through her inaction.  In this situation, where a wholly deficient complaint is dismissed without prejudice but the *pro se* plaintiff refuses to timely amend the complaint, it is well within the court's discretion to dismiss the complaint with prejudice given the plaintiff's refusal to comply with court directives.  Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in <u>Pruden v. SCI Camp Hill</u>, 252 F. App'x 436, 438 (3d Cir. 2007).  In <u>Pruden</u>, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint.  In terms that are equally applicable here the court observed that:

> The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. <u>See</u> <u>In re Westinghouse Securities Litigation</u>, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." <u>Id.</u> (quoting <u>Spain v. Gallegos</u>, 26 F.3d 439, 455 (3d Cir.1994)).

<u>Pruden v. SCI Camp Hill</u>, 252 F. App'x 436, 438 (3d Cir. 2007).

Therefore, it is recommended that the complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be dismissed as frivolous for failure to state a claim with prejudice and this case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of July,  2012.

<u>*S/Martin C.  Carlson*</u>
Martin C. Carlson
United States Magistrate Judge
